The United States Court of Appeals for the Federal Circuit is now open and in session. God Save the United States and this Honorable Court. Good morning, Counsel. This is the time set for oral argument in Fatigue Fracture Technology v. Navistar, case number 20-1094. Both Counsel are ready to proceed? Yes, Your Honor. Yes, Your Honor. Okay, Ms. Addy, fire away. Thank you, Your Honor. Good morning, Your Honors. This obviousness appeal turns on missing limitations. The claims require two specific force limitations. The fatigue force that weakens the part and the dynamic force that separates the part. Ms. Addy? None of... Yes. This is Judge Wallach. On page 42 of the blue brief, Fatigue Fracture argues that the PTAP erroneously, I'm quoting, relied on Mr. Brovold's declaration where he provides a general definition of fatigue, but he does not link that definition to anything in his prior art of patent. Then citing four of the 2018 PTAP trial practices, Fatigue Fracture argues expert testimony takes the place of a disclosure in a prior art reference. But page five of the guide provides that expert testimony may explain patents in printed publication. In light of that, how does the PTAP's reliance on Mr. Brovold's declaration blame the disclosure of his prior patent erroneously? Your Honor, the PTAP's reliance on Mr. Brovold to explain his patent is okay, but the PTAP cannot rely on Mr. Brovold to expand his patent beyond that which is disclosed because Mr. Brovold is the inventor of that patent. So under this court's precedent, such as Woodland Trust and others, testimony by an inventor needs to be corroborated. So while he can testify as to what his patent says, he can't testify about things that are not in his patent, and he can't expand the disclosure of his patent beyond that. In addition... Aren't those cases where the inventor is attempting to benefit from his explanation of his patent? Yes, and I would argue that in this case, the inventor is also attempting to benefit from the explanation of his patent. He's attempting to expand the scope of his patent to cover something that's not disclosed in his patent. But in addition, Your Honor, I think there's another difference, and that difference is that Mr. Brovold's patent talks about fatigue breaks and fatigue fails of the part, whereas the claim limitation is explicit that it is applying at least a fatigue force to the part. So while Mr. Brovold's patent is clear that it's applying a ductile ultra-low cycle force that is always load-bearing, and that causes the part to break, which he calls a fatigue break, that's different from the claim limitation, which is applying a fatigue force to the part, and that fatigue force is specifically defined as a time-varying force that causes fluctuations of stresses that weaken the part. There is no disclosure in any of the prior art of fluctuations of stresses weakening the part. And that is where the difference in fatigue force as claimed, and as Mr. Brovold defines it, is different from Mr. Brovold's naming of his break, a fatigue break. In addition, Your Honor, none of the prior art teaches that this fluctuation of stresses weaken but do not separate the part, which is required by the claim. For example, Brovold's single-shot embodiment is a load-bearing force that separates the part. Brovold's two-to-three-shot fatigue fail embodiment also separates the part. Cavallo's mechanical parting force separates the part, and Bayless's fatigue fracture force separates the part after a prolonged period of time, and admittedly with extreme cooling, which if it isn't there, Bayless says causes ductile deformation, which you cannot have in this industry. Ms. Addy, this is Judge Chen. Just getting back to Brovold, my understanding was the focus on Brovold was the embodiment in which up to three cycles of force were being applied to the part, and the first two would be regarded as a fatigue force, forces being applied that don't break the part. It would be the last cycle that would break the part. My recollection is that the patent owner's expert, Dr. Mastavoy, acknowledged that those first couple applications of force would be cyclic forces, which necessarily are fluctuations of stresses, and that the last force being applied would be a dynamic force. I believe that's what he said in his deposition, to break the rod. What's wrong with, or why was it unreasonable for the board to understand Brovold in that manner, in the sense that the embodiment with multiple applications of a force, the first few are being applied and sort of breaking down the part, weakening the part, but not breaking the part, and then you've got the final force applied that actually breaks the part. Thank you, Your Honor. There are several reasons, but first, remember, the PTAB construed the claimed fatigue force as a force, time varying, a force that causes fluctuations of stresses that weaken the part. Nowhere in the record is there any testimony that there's fluctuations of stresses in Brovold, and that makes sense, because Brovold is this ultra-low cycle force. You hit it once, it's load-bearing, if it breaks, you're done. But if it doesn't, then you reload the force and you hit it again. There's no disclosure there. But secondly, and I think Mr. Mastavoy was very clear on this, when counsel asked him if Brovold's force causes fluctuations of stresses on the connecting rod, he says, no, not fluctuations, it causes a continuous increase in stress until the part fractures, and that's at Appendix 525, Your Honor. So at least for this fatigue force that is applied to the part in the claim, that's different from this load-bearing ductile force. Did Mastavoy refer to Brovold's force as a cyclic force? I believe he did. He did, Your Honor. He said it was a cyclic force, but he didn't say that it causes fluctuations of stresses. He said, no, it doesn't. It causes an increase in stress until the part breaks, and that's different because if you think about elastic fatigue, which is several thousand fluctuations of stresses, and that's what we have here, that is different from this one- or two- or three-shot load-bearing force that comes in from Brovold. So that addresses the fatigue limitation. But on the dynamic force limitation, Your Honor, Brovold also cannot satisfy the dynamic force because the dynamic force logically must be greater than the fatigue force. Just so I understand, I thought one of your criticisms of Brovold was two cycles of force cannot be a fatigue force. Is that right? You would need many, many more applications of force? Yes, and I think there's a little bit of confusion here because a fatigue force, we believe, is synonymous with an elastic force. It's a time-varying force that causes fluctuations of stresses that weaken the part. An elastic force is ten to the fourth or higher fluctuations, and so that's where the confusion is. Fatigue fractures, fatigue force is an elastic force, but the board did not find that it was an elastic force. So we believe that's the case. We can distinguish on other grounds as well, and I'd like to do that. Yes, sir. Addie, this is Judge Wallach. Let me take you back to what you just talked about, which I found on page 7 of the Gray Brief, the assertion that because independent-claimed blunt force breaks the part, you say logically the dynamic of greater magnitude than the applied fatigue force. Why is that the only possibility, and what record evidence supports that? It's the only logical possibility because, again, consider you're applying a force that is weakening the part. If you just applied that same force, you'd continue to weaken the part. If you want to separate the part, you have to apply something a little higher. But secondly- Can I just ask you, Ms. Addie, why is that right? Maybe each of the fatiguing forces, let's say, is at a level of five, and you need 20 of them or something to go down from 100 to zero, and you do a lot of the fives, and at some point all that's left is a force of three or something to get over the hump of finally breaking it. And yet the dynamic force would be the breaker. But why logically does it have to be stronger than each of the multiple applications of the fatigue force? Your Honor, it's stronger because the claim says that you're applying a fatigue force to weaken and then a dynamic force to separate. So if the fatigue force had dropped in load, then it would have separated the part. But the fatigue force hasn't separated the part. The dynamic force that's claimed is what separates the part. And I think it's helpful to look at Navistar's Exhibit 1056, which is in our reply brief at 11. And Navistar's Exhibit 1056, on the far right side, it shows the peak force at fracture is smaller than the peak of the cyclic load. And that doesn't make any sense because once you have a fracture, you don't apply anything else. Go back to the part of my question. What evidence supports your, quote, logic, close quote, argument? It seems to me that this is all a turning argument. Your Honor, the specification is replete with statements that say applying the dynamic force raises the stress intensity factor to exceed the fracture toughness of the material. And if you don't, and that's, the first one's at 103. It's also at 111 and 112. And if you don't exceed the fracture toughness of the material, you do not break the part. And if you go, and by the way, the board recognized this force has to be greater in magnitude than the fatigue force. It did that at 82 and 83 and 84 of the institution decision. But it said, quote, petitioner has not established adequately where the disclosure of Robolt teaches applying an increased hydraulic force when the connecting rod is nearing complete fracture. And, Your Honor, petitioner never taught that. Petitioner never established where that is in the record because it's not taught. Ms. Addy, this is Judge Taranto. Can I just, before you sit down, I know your time is either short or out, but can you give a short explanation of what you think is wrong with the board's ground seven, the Cavallo and Bayless, which has nothing to do with what we've been talking about up until now, but if correct would support the judgment? Yes, Your Honor. So, first of all, just as when the other grounds, neither reference discloses the claim fatigue force that requires fluctuations of stresses that weaken but do not break the part. That's what the claim requires. Secondly, one of skill in the art would not add Bayless to Cavallo because both references are directed to forces that fracture the part. Thirdly, you wouldn't add Bayless to Cavallo because Bayless is even slower and has the same problems as Brovold. So, there's no teaching or suggestion to add in Bayless because Cavallo was trying to split the rod faster and Bayless is even slower than Brovold. So, it doesn't make any sense. And Bayless admits that it's even slower with the extreme cooling, but without the extreme cooling it produces ductile necking, which you cannot have. So, for the same reason, Bayless is inappropriate to combine as Brovold. And there's no teaching to stop it. Sorry, I'm done and I see I've reached my time. So, I will hold the rest for rebuttal. Pronounce your name, sir. Is it Lovell? Thank you, Judge. It's actually Lovell. It's pronounced easier than it's spelled. Go ahead, Mr. Lovell. Thank you, Your Honor. It may please the court. Affirmance in this case is warranted and straightforward. This is just an example of an AIA where the AIA and the PTAB has worked exactly as intended to efficiently dispose of an invalid patent and claims in an IPR proceeding. There's nothing remarkable about the proceeding below, other than perhaps... I'm sorry. Can you get to the merits rather than the general, please? Sure. Sure. First of all, let me address the comment in response to Judge Chen's question about whether there's testimony from Dr. Mostova about the fluctuation of stresses in Brovold. He clearly admitted that, and that's on Appendix 526 in his deposition at page 144, lines 1 through 8. And secondly, with respect to the higher force logic that was discussed by the question from Judge Wallach, and I think we mentioned this in our brief to this court. We certainly mentioned it in our brief to the PTAB. Think of an example of a paperclip. If you bend the paperclip and you fatigue a paperclip, it gets weaker and weaker, and then that last dynamic force to actually separate the paperclip can be a very, very small force, smaller than the forces that you've used to fatigue the paperclip. So I completely disagree that the logic necessarily requires that the dynamic force be greater in magnitude than the fatigue force. If I heard Ms. Addy correctly, and you'll correct me if I didn't, I thought she said that the board repeatedly said that the dynamic force has to be greater than the fatigue force? No. I don't believe that's correct. In the institution decision, the board initially took issue and found that Navistar did not establish that in the Brovald reference that the magnitude of that final dynamic force did increase. And that was in the institution decision. And we argued that and explained that in our initial petition in order to make sure we covered all the bases, regardless of what claim construction might be adopted. But when the board adopted the construction that it adopted, which were FFT's proposed constructions for fatigue force and dynamic force, and in light of the admissions that Mr. Mastavoy and FFT made that every fatigue force is also a dynamic force, there was no longer a need for us to establish that the dynamic force had to be higher in magnitude. We argued that in the petition in order to cover our bases, but the board in the final written decision never found that. And the board's claim construction, there's no requirement of any magnitude. The claims don't discuss any magnitude or relative magnitude of the forces. I think what Ms. Addy was referring to in the institution decision, which was changed and had a different result in the final written decision, which found anticipation by Brovald. And what do you do with the slightly odd fact, if I'm understanding it correctly, that in Brovald we're talking about an application of a force two times is supposedly cyclic, which seems something fairly far for practical comparison purposes to what this patent seems to be about. Well, if you look at Brovald, and this is not Brovald's testimony, this is his patent. Yes. The patent says, column two, lines 30 to 33, that the tool system is adaptable for either brittle fractures or for cycling the members to cause fatigue breaks, generally under a low number of cycles. So we argue that it's not necessarily limited to just a couple cycles, but even if it is, that's enough. The Brovald patent also talks about cracking or breaking, and that's in column four, lines six through 14. And Brovald also talks about the quality of the fracture. At column one, nine through 12, the field of the invention is to provide a properly fitting bearing cap, and the abstract refers to quality control of the parts. At column one, line 20 to 29, it talks about when properly broken, the two parts of the bearing house will fit back together exactly as they separated. There's others. I could go on, but Brovald is talking about a high-quality fracture separation, and the fact that he can do it in a relatively low number of cycles is enough. The claim doesn't require any more than one fatigue cycle. With respect to the Bayless being slower argument that we saw quite a bit in FFT's brief and council- I think I actually understand the response to the slower. What exactly-and if you can point me to the place in the board decision that responds to this- where did the board say, here is the affirmative motivation for combining Cavallo and Bayless? Most of his discussion seems to be the patent owner says, oh, no, no, no, there isn't such a motivation, and talks about the cooling and the length of time, basically those two things. But where's the board's affirmative statement? A relevant skilled artisan would be motivated to combine Cavallo and Bayless because- I understand. How I read the board's final written decision and how we presented the grounds to the board is that essentially the motivation for grounds four and seven are very similar. That a person of skill in the art knew a fatigued rod would require lower dynamic force compared to a non-fatigued rod, and that Cavallo invites the use of fatigue force. So I think how properly read the board's final written decision should include those motivations, the general motivations, the ones that are not specific to Grobalt's particular. In other words, people of skill in the art knew about fatigue. They knew that a fatigued connecting rod would fracture more easily and that there was a motivation to reduce the final magnitude. And that that logic applied to both grounds. This is Judge Chen. I mean, as I read the board opinion at 842 to 843, the board appears to be summarizing your theory for why there would be a motivation to combine aspects of Baylis with Cavallo. And then at the very end of the analysis at 848, the board simply says, in conclusion, petitioner is demonstrated by a preponderance of evidence beyond patentability of claim one over Cavallo in view of Baylis. And I mean, one way to read all of this section of the board opinion is that the board adopted your understanding of why a skilled artist and hypothetical one would have been motivated to combine these references in this manner. Is that the best way to get there? I'm not saying it's great, but is that the best way to understand what the board has done and how we can discern what the board's thinking is here on Judge Toronto's question? Yeah, Judge Chen, thank you. I certainly agree that that's a fair way of reading this, that the board just, you know, they're at the end of the – they had already found invalidity on four other grounds and they just neglected to recap and say that they were agreeing with our arguments. But I think that's a fair reading of their final written decision. But also in the context of all the reasons for ground four as well with respect to the motivation to add fatigue force in place of Cavallo's preload. But, yes, I agree with you, Judge Chen. Thank you. Mr. Lovell, did the other side of fatigue force ever contend below that Baylis does not teach fatigue force? Maybe I shouldn't be asking that either, but I'm just – if you recall. Their experts certainly admitted that Baylis discloses fatigue force in exact – longitudinal fatigue exactly as claimed in claim one of the 915 patent. I can get the site for that. Now, I think counsel for FFT would argue that, well, we never admitted that it's fatigue to weaken but not separate is their argument. And I would argue that's attacking the references individually, which under the Bradyham Technologies case is improper. Because once you combine Baylis with Cavallo, you've got that dynamic force that's added and you've got the claimed invention. But the bigger point is there's nothing in the court's claim construction that requires fatigue to weaken but not separate. The fatigue force can be applied simultaneous with the dynamic force and contribute to the fracture separation, the preferred embodiment, and the patent teaches exactly that. And the construction of fatigue force, which FFT agrees with, and they tell this court they agree with, does not require that. They never argued for any other construction below. The PTAB adopted their construction. They waived any argument that that was required by the claims. Similar to the St. Jude medical case from October, which we submitted in a supplemental brief, if fatigue fracture wanted a particular claim construction, it was incumbent upon them to ask for it. This is just trying to ask this. Do we have to accept the proposition, and by putting it that way I'm not trying to express skepticism, that a force repeatedly applied can serve as both the fatigue force and the dynamic force? Do we have to accept that so that the last application, the one that snaps the thing, will then constitute the dynamic force? I don't think you have to accept that for us to win because in the combination, certainly in the obvious grounds, we've got a separate distinct dynamic force. However, I think it is correct under the constructions that were adopted by the PTAB, which were proposed by FFT, both in the litigation and at the PTAB. Their expert admits that every fatigue force is also a dynamic force. So I would argue that Bayless arguably anticipates, but we didn't argue that below. We combined it with Caballo's dynamic force. To answer your question, you don't need to find that that's correct in order to affirm, but I think it is correct. One point, and I think it sounds like the panel has this already, but on the Bayless's slower issue, and we didn't argue this, we didn't point this out in the brief, but if you read the specification of the asserted patent, it says that the dynamic force can be a slow rate dynamic force that would take one-tenth of a second. And at Bayless, which is operating at 40 hertz, in a tenth of a second, you're going to have four cycles of fatigue. So the argument that Broval's dynamic force is too slow and that it takes too long to go from low magnitude force to the breaking force, that's the criticism that Caballo makes. Caballo is talking about a split-second fraction of a cycle duration that it takes to build up the hydraulic fluid to get to that pressure. The specification, the preferred embodiment, says to apply the dynamic force for one-tenth of a second. So Bayless would be plenty fast. In one-tenth of a second, Bayless can go through four cycles of fatigue. So it can certainly go from low force to fracture force in less than one-tenth of a second. And unless the panel has any further questions, I think I can wrap up my argument. Thank you, counsel. Ms. Addy? Thank you. I'll be short. Counsel argued that Broval's force can satisfy the two separate force limitations in the claim, but that simply doesn't make sense. And this is a tale of two different forces, like apples and oranges, and there's no teaching or suggestion to use two forces in any of the prior art. Not any. And that's not taking it singly or combined. There has to be a teaching or suggestion. Secondly, there was no affirmative statement because there can't be of any indication to combine Bayless with Broval. You know, Navistar's argument that the board should have included that analysis doesn't satisfy the strict requirements of the APA that require an explanation. There's not one because there isn't one. Thank you, Your Honors. I appreciate your hearing arguments. Thank you, counsel. The matter will stand submitted.